**In re TEXACO INC., Texaco Capital Inc., Texaco Capital N.V., Debtors.**

**Bankruptcy Nos. 87 B 20142—87 B 20144.**

United States Bankruptcy Court, S.D. New York.

March 11, 1988.

Stutman, Treister & Glatt, P.C., Los Angeles, Cal., Baker & Botts, Houston, Tex., for Pennzoil Co.

Weil, Gotshal & Manges, New York City, for debtors.

Kramer, Levin, Nessen, Kamin & Frankel, New York City, for General Committee of Unsecured Creditors.

Keck, Mahin & Cate, Chicago, Ill., for Equity Committee.

Wachtell, Lipton, Rosen & Katz, New York City, for J. Paul Getty Trust and Harold Williams.

Deborah R. Linfield, New York City, for The New York Times Co.

Gibson Dunn & Crutcher, New York City, for Dow Jones & Co., Inc.

Bernstein Litowitz Berger & Grossmann, New York City, for derivative plaintiffs.

HOWARD SCHWARTZBERG,
Bankruptcy Judge.

Pennzoil Company ("Pennzoil"), the largest unsecured creditor of the debtor, Texaco Inc., with a state court judgment in excess of $10.3 billion, has moved for a protective order pursuant to Federal Rule of Civil Procedure 26(c) and Bankruptcy Rules 7026 and 9014. Pennzoil requests that any transcripts of the depositions taken in connection with Objections to Confirmation of the Second Amended Joint Plan of Reorganization (the "Plan") filed by the plaintiffs in sixteen shareholder derivative actions commenced on behalf of Texaco Inc. (the "derivative plaintiffs") be filed with this court under seal, if filed at all. Pennzoil also seeks an order from this court, pursuant to Rule 25 of the Local Rules of the Southern District of New York, directing attorneys in these administratively consolidated Chapter 11 cases to retain such deposition transcripts and not disseminate them to any non-party until the deposition transcripts are introduced and admitted at the hearing on confirmation of the Plan, or at any other public hearing before this court.

The New York Times, the Washington Post and Dow Jones & Co., Inc. have been permitted to intervene in order to urge the court to reject Pennzoil's request for a protective order. The debtors joined in Pennzoil's motion for a protective order as did counsel for the General Committee of Unsecured Creditors, the J. Paul Getty Trust and Harold Williams. The Equity Shareholders' Committee supported the media's opposition to the motion. The hearing was held on March 10, 1988.

### FACTUAL BACKGROUND

1. On April 12, 1987, Texaco Inc. and its two wholly owned subsidiaries each filed with this court petitions for relief under Chapter 11 of the Bankruptcy Code. Pursuant to sections 1107 and 1108 of the Bankruptcy Code the debtors are continu-

ing to operate their businesses and manage their properties as debtors in possession. The separate Chapter 11 cases were consolidated for joint administration pursuant to Bankruptcy Rule 1015.

2. Prior to the commencement of the Chapter 11 cases, a judgment was entered on December 10, 1985 in favor of Pennzoil and against Texaco Inc. in the District Court of Harris County, Texas, which currently exceeds $10.3 billion.

3. On December 2 and 8, 1987, this court ruled that it would be willing to terminate Texaco's exclusive right under 11 U.S.C. § 1121 to propose and file a plan of reorganization if the Committee of Unsecured Creditors and the Committee of Equity Shareholders could negotiate a proposed plan to which Pennzoil would unconditionally consent, and with respect to which Texaco would be permitted to have input.

4. As a result of these rulings, the debtors and Pennzoil filed with this court on January 27, 1988 their proposed Second Amended Joint Plan of Reorganization.

5. On February 8, 1988, the derivative plaintiffs filed their Objections to Confirmation of the Plan. The Objections relate to the provisions in the Plan which call for Texaco's issuance of releases and indemnities to its own officers and directors as well as to third party entities and for the discontinuance of the derivative actions, with prejudice.

6. On February 9, 1988, the derivative plaintiffs served notice of 18 depositions and requests for the production of documents.

7. On February 16, 1988, the debtors served their own Notices of Deposition and Requests for Production of Documents by Derivative Plaintiffs.

8. It is alleged by Pennzoil that certain members of the press have sought unsuccessfully to attend or have access to the depositions of the witnesses. Pennzoil also alleges that the press has sought access to the transcripts of those depositions prior to the hearing on confirmation and prior to the ruling on the admissibility, relevance or materiality of the information elicited during the depositions. Moreover, Pennzoil alleges that the derivative plaintiffs have stated their willingness to give copies of the transcripts to the press.

9. The New York Times, Washington Post and Dow Jones & Co., Inc. oppose Pennzoil's motion for a protective order because they argue that such an order would curtail and impair the media's protected right to obtain information. They maintain that Pennzoil can show no good cause to justify retroactively closing proceedings which took place without any judicial restriction or any reasonable expectation of broad confidentiality. The newspaper publishers assert that the Texaco Chapter 11 cases are very newsworthy and that because of the intense public interest, the news reporting about the Texaco–Pennzoil litigation should continue to be open so that the public can be informed of the issues at stake as well as the judicial process.

## DISCUSSION

The Texaco debtors and Pennzoil have arrived at a critical stage in finally resolving the litigation with Pennzoil. The debtors have negotiated a consensual plan of reorganization which has the support of the statutory committees and the debtors' largest unsecured creditor, Pennzoil. Texaco's shareholders are now in the process of voting on the Plan and deciding whether the settlement with Pennzoil and the provisions of the Plan are in Texaco's best interests as well as their own. Indeed, Texaco's shareholders will bear most of the burden of the Pennzoil judgment. The shareholders will make this critical decision on the basis of the information contained in the Plan and in the disclosure statement which has been approved by this court. Pennzoil contends that the revelation of information contained in a pretrial deposition which has not been judicially ruled on as admissible, relevant or competent may have a deleterious impact on the voting process.

In order to limit the media's access to the depositions which have already been taken, and to restrict the dissemination of information obtained from depositions which are scheduled to be taken in preparation for

the confirmation hearing scheduled to commence on March 22, 1988, Pennzoil seeks a limited protective order until after the confirmation hearing. Pennzoil's main basis for protection is Federal Rule of Civil Procedure 26(c), which provides that upon a showing of good cause the court may issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden of expense.

■ A protective order may be issued for cause shown when it appears that the liberal discovery process in civil litigation may be abused by uncontrolled dissemination of information obtained in discovery procedures commenced by the litigants. Mr. Justice Powell emphasized this point when he said:

> Rule 26, however, must be viewed in its entirety. Liberal discovery is provided for the sole purpose of assisting in the preparation and trial, or the settlement, of litigated disputes. Because of the liberality of pretrial discovery permitted by Rule 26(b)(1), it is necessary for the trial court to have the authority to issue protective orders conferred by Rule 26(c). It is clear from experience that pretrial discovery by depositions and interrogatories has a significant potential for abuse.

*Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34, 104 S.Ct. 2199, 2208, 81 L.Ed.2d 17 (1984).

■ The First Amendment right to speak and publish freely is not offended by a reasonable restriction on the dissemination of information obtained as a result of pretrial discovery because pretrial depositions and interrogatories are not public components of civil litigation. *Seattle Times Co. v. Rhinehart*, 467 U.S. at 33, 104 S.Ct. at 2208. Pretrial depositions and interrogatories do not become part of a trial unless and until their contents are offered in evidence. *Gannett Co. v. De Pasquale*, 443 U.S. 368, 396, 99 S.Ct. 2898, 2914, 61 L.Ed.2d 608 (1979). (Concurring opinion of Mr. Chief Justice Burger). Therefore, a protective order entered on a showing of good cause, as required by Federal Rule of Civil Procedure 26(c), which does not restrict the dissemination of the information if gained from sources other than the pretrial discovery, does not violate the First Amendment. *Seattle Times Co. v. Rhinehart*, 467 U.S. at 37, 104 S.Ct. at 2209.

A party seeking a protective order has the burden of showing that good cause exists for the issuance of that order. *In re "Agent Orange" Product Liability Litigation*, 821 F.2d 139, 145 (2d Cir.1987). Access to discovery materials is particularly appropriate when the subject matter of the litigation is of general public interest. *In re "Agent Orange" Product Liability Litigation*, 821 F.2d at 146. Conversely, if good cause is not shown, the pretrial depositions and interrogatories should not receive judicial protection. *Avirgan v. Hull*, 118 F.R.D. 252 (D.D.C.1987); *Koster v. Chase Manhattan Bank*, 93 F.R.D. 471 (S.D.N.Y.1982). However, the party seeking a protective order cannot rely solely on conclusory statements. *Anderson v. Cryovac, Inc.*, 805 F.2d 1, 8 (1st Cir.1986); *Koster v. Chase Manhattan Bank*, 93 F.R.D. at 479. In order for a party to sustain its burden for the issuance of a protective order, it must show specifically that it will indeed be harmed by disclosure. *Reliance Insurance Co. v. Barron's*, 428 F.Supp. 200, 224 (S.D.N.Y.1977).

The Pennzoil–Texaco litigation and the Texaco Chapter 11 cases have had wide public exposure. The principal officers of both companies have been interviewed on television and in the press and have appeared on the covers of leading magazines. The attorneys for the parties and the statutory committees have given statements to the press, as have the chairmen of the committees. The manner in which the litigation proceeded in the state courts in Texas has been the subject of many newspaper editorials and television commentaries. The Chapter 11 cases have been given extensive coverage by the media and by financial analysts. The testimony of witnesses in the Texas litigation and in this court are a matter of public record and have been widely reported by the media. Thus, much has been revealed and written about the Pennzoil–Texaco dispute since

January of 1984, when Texaco first acquired the Getty Oil stock which gave rise to the litigation commenced by Pennzoil.

The depositions which are the subject of Pennzoil's motion for a protective order were taken as a result of objections filed by certain Texaco shareholders who are plaintiffs in derivative actions commenced on Texaco's behalf against officers and directors of Texaco and third parties who the plaintiffs contend are responsible for having caused Texaco to suffer a judgment in favor of Pennzoil in excess of $10.3 billion. The derivative plaintiffs object to the provisions in the Plan that call for the issuances of releases and indemnities to Texaco's own officers and directors and to third parties, as well as the discontinuance of the derivative actions, with prejudice. The depositions include the gathering of information as to the reason for the inclusion of the releases, indemnities and discontinuances in the plan of reorganization. The focus of the discovery is not upon any personal trait, characteristic or reputation of any witness, nor is there any hint that any of the witnesses are subjects or targets of criminal investigations currently being conducted. The movants are mainly concerned that the media might disseminate incorrectly reported testimony or irrelevant and inadmissible information which might improperly affect the voting process concerning the plan of reorganization, which concludes in ten days.

The court has conducted an *in camera* hearing as to specific portions of testimony contained in depositions that have been typed. The depositions have not yet been signed and certain typographical errors and misstatements have not been corrected. The witnesses will be referred to as witness No. 1, witness No. 2, and witness No. 3. There was some language on pages 39 and 47 of witness No. 1 which Pennzoil felt was offensive to it. Similarly, Pennzoil objected to revealing a personal statement made by witness No. 2 on page 19. A typographical error as to witness No. 3 was pointed out on page 234 of his deposition which conveyed a different meaning than was intended. Additionally, a flippant statement by a lawyer as to witness No. 3

was reported on page 246 of his deposition. The aforesaid pages should not be made available to the public until after March 30, 1988, the deadline for confirmation, as stated in the Plan. With the exception of these pages, there is no basis for the issuance of a protective order, as requested.

■ Pennzoil and the other supporting parties have not sufficiently demonstrated good cause within the meaning of Rule 26(c) to warrant the issuance of a protective order prohibiting the dissemination of the depositions in question, other than the specific pages previously noted. The information contained in the depositions has either been substantially disclosed to the public already, or is not of the type that will result in harm to the parties or the witnesses if disclosed.

## CONCLUSIONS OF LAW

1. This court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a). This is a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(L).

2. Pennzoil and those in support of its motion for a protective order have not sustained their burden of demonstrating that they, or the witnesses, will be harmed by the disclosure of most of the information contained in the depositions taken in connection with the confirmation hearing scheduled to commence on March 22, 1988.

3. Sufficient cause has been shown to warrant withholding specific pages of certain depositions until March 30, 1988. These pages are pages 39 and 47 as to witness No. 1; page 19 as to witness No. 2, and pages 234 and 246 as to witness No. 3.

4. With the exception of the foregoing pages, Pennzoil's motion for a protective order pursuant to Federal Rule of Civil Procedure 26(c) and Bankruptcy Rules 7026 and 9014 is denied.

5. Pennzoil's request for an order pursuant to Rule 25 of the Local Rules of the Southern District of New York directing the attorneys in these cases to retain the depositions until the depositions are intro-

duced and admitted at the hearing on confirmation of the Plan, or at any other public hearing before this court, is also denied.

SETTLE ORDER on notice.